# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                              No. CR 11-2281 JB

RICHARD D. CRISMAN,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Appeal of September 13, 2011 Order of Detention, filed September 17, 2011 (Doc. 18)("Appeal").  The Court held an evidentiary hearing on October 28, 2011.  The primary issue is whether the Court should vacate the Detention Order Pending Trial that the Honorable Robert H. Scott, United States Magistrate Judge, entered on September 8, 2011, see Doc. 12 ("Detention Order"), and release Defendant Richard D. Crisman pre-trial.  The Court concludes that: (i) Crisman presents a danger to the community and (ii) no conditions or combination of conditions can reasonably assure the safety of the community. Accordingly, the Court denies Crisman's appeal, affirms Judge Scott's detention order, and declines to release Crisman pretrial.

## FACTUAL BACKGROUND

In the fall of 2010, New Mexico State Police ("NMSP") Sergeant Matthew Pilon was monitoring the usage of peer-to-peer ("P2P")[1] file-sharing programs for visual depictions of minors

---

[1] P2P file sharing allows users to download files using a P2P software client that searches for other connected computers.  See Peer-to-Peer File Sharing, WIKIPEDIA.ORG, available at http://en.wikipedia.org/wiki/Peer-to-peer_file_sharing (last visited November 10, 2011).  The "peers" are computer systems connected to each other through the internet, and the only

engaged in sexually explicit conduct, also known as child pornography.  United States' Response

to Defendant's Appeal of September 13, 2011 Order of Detention [Doc. 18] ¶ 8, at 4, filed

September 23, 2011 (Doc. 21)("Response"); Transcript of Hearing before Judge Browning at 15:12

(October 28, 2011)(Dupre)("Oct. 28, 2011 Tr.").[2]  Pilon located a computer that offered and

participated in the distribution of child pornography.  See Response ¶ 8, at 4.  On four or five

separate occasions, Pilon made contact with the computer, noting its unique Internet Protocol ("IP")[3]

Address -- 67.16.60.212.  Response at ¶ 8, at 4; Oct. 28, 2011 Tr. at 15:12-18 (Dupre).  Pilon

reviewed the files and concluded that they met the definition of child pornography.  See Response

---

requirements for a computer to a join a peer-to-peer network are an internet connection and a P2P software.  Peer-to-Peer File Sharing, WIKIPEDIA.ORG, available at http://en.wikipedia.org/wiki/Peer-to-peer_file_sharing (last visited November 10, 2011).  In United States v. Swenson, 335 F. App'x 751 (10th Cir. 2009)(unpublished), the United States Court of Appeals for the Tenth Circuit described how the Limewire P2P system operates:

> Once installed on a computer, Limewire allows a user to search for, download and share various types of files over the Internet with other users of the Limewire application.  With the program, a user can input search terms, such as the name of a file or subject matter, and receive in response a list of matching files being shared by computers connected to the Limewire network.  The user may then select for download a desired file from the list and connect to the computer sharing the file to obtain it.  The user can also share files with others by placing files in a computer folder designated for sharing, although this sharing feature is elective and may be disabled.

335 F. App'x at 752 (citing United States v. Shaffer, 472 F.3d 1219, 1221-22 (10th Cir. 2007)(discussing P2P application Kazaa)).

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[3]An IP address is an address specific to every computer attached to the internet.  Anytime a computer logs onto the internet it has to have a unique IP address to transmit information and to receive information through the internet.  See United States v. Christy, 785 F.Supp.2d 1004, 1010 n.4 (D.N.M. 2011)(Browning, J.).  IP addresses can assist law enforcement in finding a particular computer on the internet, because they lead investigators to a particular Internet Service Provider ("ISP") who can usually identify the computer by physical address.  Response at 4 n.2.

¶ 8, at 4; Oct. 28, 2011 Tr. at 17:13-14 (Rees, Dupre).  Pilon determined that the IP address in question -- 67.16.60.212 -- was issued to Cable One, and, in response to an administrative subpoena, Cable One informed him that the IP address was registered to 3748 NE Rancher Loop, Rio Rancho, Bernalillo County, New Mexico.  See Response ¶ 9, at 4; Oct. 28, 2011 Tr. at 17:2-6 (Dupre).

On September 21, 2010, agents with the New Mexico Internet Crimes Against Children Task Force ("ICAC Task Force") executed a search warrant at Crisman's residence[4] to search for evidence and instrumentalities of child pornography.  Response ¶ 10, at 4; Oct. 28, 2011 Tr. at 17:18-21 (Rees, Dupre).  Agents seized multiple computers and computer related media, including: (i) a Hewlett Packard Pavilion computer, serial number CND911273G; (ii) a Western Digital 500 GB external hard drive, serial number 2977P3CXT; and (iii) an Iomega PC 100 MB zip disk.[5]  See Response ¶10, at 4-5; Oct. 28, 2011 Tr. at 18:11-12, 18:18-21 (Rees, Dupre).  During the execution of the search warrant, Crisman participated in an interview with ICAC Task Force investigators.  See Response ¶ 11, at 5; Oct. 28, 2011 Tr. at 19:12-14 (Rees, Dupre).  Crisman informed investigators that he was a "computer geek" and worked for Best Buy's computer and technology customer support service -- the Geek Squad.  See Response ¶ 11, at 5; Oct. 28, 2011 Tr. at 25:20-26:7 (Rees, Dupre).  Crisman admitted to using P2P file-sharing programs, like Limewire, to receive child pornography images and videos on his computer.  See Response ¶ 11, at 5; Oct. 28, 2011 Tr. at 22:11-15 (Dupre).  Crisman also admitted that the images he downloaded were of pre-teen children, who could range in age from five-years old to ten- or twelve-years old, in sexual positions

_____

[4]At the time of his arrest, Crisman resided at 3748 NE Rancher Loop, Rio Rancho, Bernalillo County, New Mexico with his mother, Virginia Crisman.  See Appeal ¶ 11, at 4.

[5]A zip disk or zip drive is a medium-capacity removable disk storage system.  See Zip Drive, WIKIPEDIA.ORG, available at http://en.wikipedia.org/wiki/Zip_drive (last visited November 10, 2011).

. See Response ¶ 11, at 5; Oct. 28, 2011 Tr. at 22:21-23 (Dupre).  To find child pornography images or videos, Crisman searched using terms like "child sex," Response ¶ 11, at 5, or "5YO," Oct. 28, 2011 Tr. at 23:10-18 (Rees, Dupre).  Crisman saved the images and videos he downloaded in a file named "A Plus" to conceal them from family and friends.  Response ¶ 11, at 5; Oct. 28, 2011 Tr. at 23:19-23 (Rees, Dupre).  Crisman told investigators that he is addicted to child pornography, and would masturbate when viewing the images and the videos that he downloaded.  See Response ¶ 11, at 5; Oct. 28, 2011 Tr. at 24:4-5 (Dupre).

During the course of executing the search warrant, investigators found approximately seventy-two pairs of soiled women's and children's underwear in Crisman's bedroom.  See Response ¶ 12, at 5; Oct. 28, 2011 Tr. at 24:16-19 (Dupre).  Crisman took some of the underwear from a co-worker, without her knowledge or permission.  See Response ¶ 12, at 5; Oct. 28, 2011 Tr. at 24:20-25:4 (Rees, Dupre).  He also took underwear belonging to the co-worker's underage children, and from different family and friend's homes.  See Response ¶ 12, at 5-6; Oct. 28, 2011 Tr. at 24:20-25:4 (Rees, Dupre).  Crisman used the underwear to masturbate, sometimes placing the underwear on his head while masturbating to the child pornography images.  See Response ¶ 12, at 5; Oct. 28, 2011 Tr. at 24:16-19 (Dupre).  Most pairs were children's underwear.  See Oct. 28, 2011 Tr. at 25:5-8 (Rees, Dupre).  He stated that he was sexually attracted to children, because they are innocent.  See Oct. 28, 2011 Tr. at 28:17-18 (Dupre).  In the course of the interview, Crisman also admitted that he fantasized about having sex with children, but said that he knew it was wrong and that he would never act on his desire.  See Response ¶ 12, at 6; Oct. 28, 2011 Tr. at 28:21-29:4 (Rees, Dupre).  He also told officers about a specific fantasy that Crisman had about a five-year old boy that lived next door to him: he wanted to lick the child everywhere, including his penis.  See Response ¶ 15, at 8; Oct. 28, 2011 Tr. at 29:5-10 (Rees, Dupre).  Crisman informed officers that he had

been to the boy's home to work on a computer and seen the children.  <u>See</u> Oct. 28, 2011 Tr. at 29:8-

10 (Dupre).  Furthermore, Crisman stated that he preferred children between five- and ten-years old.

<u>See</u> Oct. 28 Tr. at 29:15-17 (Rees, Dupre).

      While searching the home, investigators also located: (i) dozens of Ipods;[6] (ii) hard drives;

(iii) credit cards in other person's names; (iv) ID's belonging to customers and employees of Best

Buy Co., Inc.; and (v) checks, driver's licenses, and social security cards.  <u>See</u> Response ¶ 13, at 6;

Oct. 28, 2011 Tr. at 18:5-10, 26:11-19 (Rees, Dupre).  Crisman admitted that he obtained the credit

cards and checks from people's purses when he worked at Best Buy, that he took the items without

their knowledge, and that he used them to purchase online subscriptions to pornography websites.

<u>See</u> Response ¶ 13, at 6; Oct. 28, 2011 Tr. at 26:22-27:1 (Dupre).  About $20,000.00 of Apple Inc.

products were found in total at the home, including six Macbooks and Ipods, which were discovered

with receipts indicating that Crisman sold them on Ebay and other internet sites to Canada and the

northeastern United States.  <u>See</u> Response ¶ 13, at 6; Oct. 28, 2011 Tr. at 25:11-17 (Dupre).

Although Crisman initially stated that he bought the Apple products with his Best Buy employee

discount, Crisman later admitted that he stole the items without payment or permission directly from

the delivery truck.  <u>See</u> Response ¶ 13, at 6; Oct. 28, 2011 Tr. at 25:20-25 (Dupre).  Crisman also

used his position at Best Buy to access customer information on "attractive" customers, research

them on internet sites such as Facebook, and attempt to access customer electronic mail accounts.

Response ¶ 14, at 7; Oct. 28, 2011 Tr. at 27:5-28:6 (Dupre).

      Investigators obtained supplemental search warrants to seize all of the stolen property,

---

[6]Ipod is a line of portable media players created and marketed by Apple Inc.  <u>See</u> Ipod
Classic, APPLE.COM, available at http://www.apple.com/ipodclassic/ (Last visited November 14,
2011).

children's underwear, credit cards, checks, evidence of identification theft, evidence of fraud, and evidence of forgery. See Response ¶ 14, at 6. Pilon conducted an onsite preview of Crisman's Hewlett Packard Notebook computer and found approximately 3,416 child pornography images. See Response ¶ 15, at 7. The investigators read Crisman his Miranda rights,[7] which Crisman waived. See Response ¶ 15, at 7. Crisman admitted that he had been downloading child pornography images since 2000. See Response ¶ 15, at 7. He further admitted that investigators would find images and videos involving children between the ages of two and twelve. See Response ¶ 15, at 7. In the course of the interview, Crisman told investigators that he found the images and videos using P2P file-sharing search terms such as "boys in action," "LS Magazine," "young boy," "young girl," and "pedo." Response ¶ 15, at 7. Crisman told officers that he would usually masturbate between two to three times daily while viewing the child pornography, but occasionally would masturbate five or six times a day, and that he knew his conduct violated the law. See Response ¶ 15, at 7-8. The investigators arrested Crisman on state charges, so as to allow Plaintiff United States of America sufficient time to complete and review the forensic examination of the seized computer media. See Response ¶ 16, at 8. Judge George P. Eichwald of the Thirteenth Judicial District, Sandoval County, State of New Mexico, released Crisman on a $15,000.00 bond and conditioned his release on Crisman not using or accessing computers or having any contact with individuals under eighteen-years old. See Arraignment and Order of Setting Conditions of Release

_____

[7]Miranda v. Arizona, 384 U.S. 436, 478-79 (1966)(holding that, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized," and stating that "[p]rocedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored," law enforcement officers must warn the individual that he has the right to remain silent, that he has the right to the presence of an attorney, and that, if he cannot afford an attorney, one will be appointed for him).

at 1 (dated November 15, 2010), filed September 23, 2011 (Doc. 21-1)("Order Setting Conditions").[8]

The computers and computer-related media were sent to the Federal Bureau of Investigation ("FBI") Regional Computer Forensics Laboratory ("RCFL").  Oct. 28, 2011 Tr. at 29:25-30:2 (Dupre).  FBI Computer Forensic Examiner Jeremy Guilmette completed the forensic examination of the seized computers and computer related media.  See Response ¶ 16, at 8; Oct. 28, 2011 Tr. at 30:5-8 (Dupre).  On the Hewlett Packard computer, Guilmette found over 200 images and ten videos consistent with child pornography.  See Response ¶ 16, at 8.  On a Western Digital external hard drive, Guilmette found 13,532 images and nine video files consistent with child pornography.  See Response ¶ 16, at 8.  On the Iomega zip disk, Guilmette found 1301 images consistent with child pornography.  See Response ¶ 16, at 8.  In total, the volume of child pornography images and videos reached approximately 50,000, but Guilmette stopped investigating after consulting with the United States Attorney's Office.  See Oct. 28, 2011 Tr. at 30:9-19 (Dupre).  Some of the images and videos depicted children being abused in sadistic and masochistic ways.  See Response ¶ 18, at 9.  Rio Rancho Police Department Detective Kevin Dupre sent the child pornography images and videos to the National Center for Missing and Exploited Children ("NCMEC") in an effort to identify real, known children depicted in the images and videos.  Response ¶ 17, at 8.  According to NCMEC, Crisman had 1,884 known child pornography images from approximately 100 different series and nine known child pornography videos from five different series.[9]

---

[8]Crisman faced twenty state counts of possession of visual medium of sexual exploitation of children under 18 years of age and one count of receiving stolen property worth over $20,000.00 in state court.  See Order Setting Conditions at 1.  At the hearing, Crisman's counsel, Arturo Nieto, informed the Court that the state prosecution was dismissed two weeks after the federal indictment. See Oct. 28, 2011 Tr. at 65:15-16 (Nieto).

[9]Each series is a different photographed child.  That NCMEC did not identify other child pornography images and videos, could mean that the children in the images have yet to be

Upon completion of the computer forensics examination, a federal grand jury indicted Crisman.  See Response ¶ 19, at 9.  An arrest warrant was issued, and Crisman was arrested in September 2011.  See Response ¶ 19, at 9.  At the time of his arrest, Crisman was subject to state conditions of pretrial release, and prohibited from using or having access to computers.  See Response ¶ 19, at 9.  When officers arrested him, Crisman admitted that he had just come from using the internet at Central New Mexico Community College ("CNM") and that he was taking an internet class through CNM.  Response ¶ 19, at 9; Oct. 28, 2011 Tr. at 31:11-17, 33:3-8 (Rees, Dupre).

## PROCEDURAL BACKGROUND

On August 23, 2011, a federal grand jury indicted Crisman on six Counts: (i) Counts 1-3 are violations of 18 U.S.C. § 2252(a)(2), (b)(1), and § 2256, that being Receipt of Visual Depiction of Minors Engaging in Sexually Explicit Conduct; and (ii) Counts 4-6 are violations of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2) and § 2256, that being Possession of a Matter Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct.  See Redacted Indictment at 1-3, filed August 23, 2011 (Doc. 2)("Indictment").  On September 6, 2011, Crisman was arrested pursuant to the Indictment.  See Appeal ¶ 1, at 1.  On September 7, 2011, the United States moved to detain Crisman pending trial.  See Motion for Detention Hearing, filed September 7, 2011 (Doc. 9)("Motion").  Pre-Trial Services ("PTS") Officer Anthony Galaz made a recommendation and report to Judge Scott.  In the PTS report, Galaz recommended release to the La Posada Halfway House in Albuquerque, New Mexico, subject to several conditions related to Crisman's access to children and to the internet.  Judge Scott held a detention hearing on September 8, 2011.  See Criminal Clerk's Minutes at 1 (September 8, 2011), filed September 8, 2011 (Doc. 9); Appeal ¶ 3,

---

discovered and identified.  See Response at 9 n.3.

at 2.   At the hearing, Crisman argued that he poses no danger to the community or of non-appearance, because he successfully fulfilled the state conditions of release and because he is seeking counseling.   See Transcript of Hearing before Judge Scott at 6:12-7:10 (September 8, 2011)(Nieto), filed September 19, 2011 (Doc. 19)("Sept. 8, 2011 Tr.").   Crisman asserted that he did not recall the state conditions of release prohibiting internet use.   See Sept. 8, 2011 Tr. at 7:24-8:2 (Nieto).   He stated that he was taking a class that required internet access, but that he was using his sister to access the internet to complete his homework.   See Sept. 8, 2011 Tr. at 8:17-23 (Nieto). He admitted, however,  that he was on the CNM website a couple of days before his arrest.   See Sept. 8, 2011 Tr. at 8:24-9:2 (Nieto)("My understanding is that [Crisman] was on the CNM website a couple of days before he was arrested and that he told the arresting officer something to that effect").   Crisman asked that he be allowed to live with his mother and stated that he would participate in the electronic monitoring program.   See Sept. 8, 2011 Tr. at 9:6-9 (Nieto).   Judge Scott granted the United States' Motion, ordering Crisman detained pending trial.   See Detention Order at 2.   Judge Scott found that Crisman had not rebutted the presumption that there was no condition or combination of conditions that would reasonably assure Crisman's appearance or the safety of the community.   See Detention Order at 2.

On September 8, 2011, Crisman filed his Defendant's Motion for Review of September 8, 2011 Order of Detention, filed September 8, 2011 (Doc. 14)("Motion for Review").   On September 13, 2011, Judge Scott held an evidentiary hearing.   See Criminal Clerk's Minutes at 1 (September 13, 2011), filed September 13, 2011 (Doc. 16).   At that hearing, Crisman called William Chambreau to testify as a lay witness.   See Transcript of Hearing before Judge Scott at 5:6-7, 5:12-13 (September 13, 2011)(Judge Scott, Chambreau), filed September 21, 2011 (Doc. 20)("Sept. 13, 2011 Tr.").   Chambreau is a licensed professional counselor in private practice in Albuquerque who

specializes in sex offender treatment and sex addiction.  <u>See</u> Sept. 13, 2011 Tr. at 5:19-20, 5:23-24

(Chambreau).  Crisman was referred to Chambreau for treatment.  <u>See</u> Sept. 13, 2011 Tr. at 5:20-21

(Chambreau).  Chambreau had treated Crisman for approximately three to four months at the time

of the hearing.  <u>See</u> Sept. 13, 2011 Tr. at 6:2 (Chambreau).  Chambreau diagnosed Crisman with a

major depressive disorder coupled with anxiety.  <u>See</u> Sept. 13, 2011 Tr. at 6:6-9 (Chambreau).  After

this diagnosis, Chambreau referred Crisman to a primary care physician who prescribed Zoloft and

Seroquel.[10]  Seroquel was used as a supplemental treatment for the anxiety and depression.

<u>See</u> Sept. 13, 2011 Tr. at 7:5-8 (Nieto, Chambreau).

On cross-examination, Chambreau testified that, during his four months of treating Crisman,

he would see Crisman once a week for one hour.  <u>See</u> Sept. 13, 2011 Tr. at 7:22-8:5 (Tierney,

Chambreau).   When asked whether child pornography presents a danger to the community,

Chambreau answered that "[i]t depends on an assessment of the offender who has been charged with

child pornography."  Sept. 13, 2011 Tr. at 8:16-17, 8:21-22 (Tierney, Chambreau).   Chambreau

testified:

> Basically when I deal with people who have been charged with this kind of crime
> there is a difference between doers and lookers and dangers into the community.  I
> think that in Mr. -- Richard's case is that he is addicted -- he's a sex addict, he's
> addicted to child pornography in that that's the main culprit in this kind of alleged
> crime.  And I think that we have to distinguish when we do an assessment on a client
> in terms of dangerousness to the community is, is he a doer or is he a looker.  And
> he's a looker.

Sept. 13, 2011 Tr. at 10:11-19 (Chambreau).  Chambreau stated that possession of over 13,000

images was expected behavior for someone addicted to child pornography.  <u>See</u> Sept. 13, 2011 Tr.

at 10:20-11:1 (Tierney, Chambreau).   Chambreau stated that the fact that Crisman has been

---

[10]Zoloft is an antidepressant drug, and Seroquel is an antipsychotic drug.  <u>See</u> Sept. 13, 2011
Tr. at 6:15-18 (Nieto, Chambreau).

downloading these images since 2000 is not a measure of dangerousness, but instead reflects "how deeply steeped he was in his addiction untreated."   Sept. 13, 2011 Tr. at 11:5-10 (Tierney, Chambreau).  When questioned whether Crisman continues to view child pornography, Chambreau responded: "Since he's been in counseling, to my knowledge, he has not viewed any child pornography."  Sept. 13, 2011 Tr. at 12:10-15 (Tierney, Chambreau).

Analogizing child pornography to heroin use, Chambreau agreed that, the more an addict is exposed to child pornography, his tolerance increases, and masturbating to child pornography six times a day would be evidence of a severe addiction.  See Sept. 13, 2011 Tr. at 13:12-15 (Tierney, Chambreau).  Ascribing a numerical danger level to Crisman's "non-specific" fantasies to touch children, on a scale of one to ten, Chambreau rated Crisman's danger level a four.  Sept. 13, 2011 Tr. at 13:16-23 (Tierney, Chambreau).  When asked whether Crisman's specific fantasies regarding neighborhood children increased his dangerousness, Chambreau responded that, because Crisman is in therapy, these specific fantasies do not raise his dangerousness level above a four.  See Sept. 13, 2011 Tr. at 14:1-8 (Tierney, Chambreau).  Chambreau conceded, however, that stealing women and children's underwear is "escalation," and would increase Crisman's dangerousness. Sept. 13, 2011 Tr. at 14:15-15:5 (Chambreau).  Nonetheless, Chambreau maintained that Crisman's danger level would still be a four, because he's in treatment.  See Sept. 13, 2011 Tr. at 15:7-8 (Chambreau).

With respect to Crisman's potential placement in La Posada Halfway House, Chambreau testified: "I think that the La Posada can give him enough appropriate supervision, with treatment seeing me or some other program, that the community is not in danger."  Sept. 13, 2011 Tr. at 16:9-12 (Chambreau).  Chambreau admitted, however, that, "hypothetically," electronic monitoring could not prevent Crisman from following through with his desires or accessing pornography in a public library.  Sept. 13, 2011 Tr. 16:13-17:2 (Tierney, Chambreau).

At the September 13, 2011 hearing before Judge Scott, Crisman argued that Chambreau's testimony established that Crisman is not psychotic and should address Judge Scott's previous concerns upon hearing that Crisman took Seroquel.  See Sept. 13, 2011 Tr. at 19:19-24 (Nieto). Judge Scott replied that his concerns had not disappeared, because Crisman called Chambreau as a lay witness and Chambreau was not the person who wrote the prescription.  See Sept. 13, 2011 Tr. at 19:25-20:2 (Judge Scott).  Crisman's counsel, Arturo Nieto, and Judge Scott proceeded to engage in a lengthy discussion of Chambreau's testimony.  Judge Scott agreed that Chambreau may have referred Crisman to a physician because Chambreau cannot prescribe medications, but asserted that Chambreau neither prescribed the Seroquel nor rendered the opinion that the prescription was necessary.  See Sept. 13, 2011 Tr. at 20:3-11 (Judge Scott, Nieto).  Crisman argued that Judge Scott could fashion condition that would address the United States' dangerousness concerns.  See Sept. 13, 2011 Tr. at 23:1-3 (Nieto).  Crisman stated that PTS' recommendations -- that Crisman be released to the La Posada Halfway House -- would address the concerns, but argued that the concerns would be better addressed if he were allowed to live at home.  See Sept. 13, 2011 Tr. at 23:3-6 (Nieto).  Crisman argued that he was on conditions of release regarding the state charges and did not violate them.  See Sept. 13, 2011 Tr. at 23:7-8 (Nieto).  He also emphasized that he sought treatment on his own and has taken responsibility for his issues.  See Sept. 13, 2011 Tr. at 23:8-13 (Nieto).  Crisman admitted that Chambreau testified that there is a forty percent danger that Crisman will do something, but reiterated that he is responding to the treatment -- treatment that he will not get in jail.  See Sept. 13, 2011 Tr. at 23:22-24:9 (Judge Scott, Nieto).  The United States argued that the presumption had not been rebutted and that, based on the testimony, there are no conditions of release that would protect the safety of the community.  See Sept. 13, 2011 Tr. at 25:23-26:2 (Tierney).

Judge Scott indicated that he would deny the Motion for Review because Crisman has admitted his addictions and his own counselor stated that Crisman is a forty-percent risk.  See Sept. 13, 2011 Tr. at 26:7-11 (Judge Scott).  Forty percent, Judge Scott found, is too great a risk.  See Sept. 13, 2011 Tr. at 26:11-12 (Judge Scott).  In denying the Motion for Review, Judge Scott determined "that there's no conditions that would reasonably ensure the safety of any other person or the community, and that finding is supported by clear and convincing evidence."  Sept. 13, 2011 Tr. at 26:13-16 (Judge Scott).  Judge Scott also found, by a preponderance of the evidence, that there are no conditions that would ensure Crisman's appearance.  See Sept. 13, 2011 Tr. at 26:16-18 (Judge Scott).  With respect to the medications Crisman was prescribed, Judge Scott expressed concern that he did not know the amount of the prescription or why the drugs were given.  See Sept. 13, 2011 Tr. at 26:23-25 (Judge Scott).  Noting Crisman's appearance, Judge Scott indicated that Crisman appears "to be not only extremely depressed but extremely troubled."  Sept. 13, 2011 Tr. at 27:4-5 (Judge Scott).  On September 13, 2011, Judge Scott entered an order denying Crisman's Motion.  See Order Denying Defendant's Motion for Review of September 8, 2011 Order of Detention, filed September 13, 2011 (Doc. 17).

On September 17, 2011, Crisman filed his Appeal.  In his Appeal, Crisman concedes that the charged offenses create a rebuttable presumption of detention under 18 U.S.C. § 3142, but argues that, while technically categorized as crimes of violence, his conduct was no more than receipt and possession.  See Appeal ¶ 9, at 4.  He asserts that his character, mental condition, family and community ties, past conduct, lack of criminal history, and record of appearance at court proceedings all suggest that the Court should release him pending trial.  See Appeal ¶ 10, at 4.  Crisman also represents that he sought treatment for his addiction and that he has responded to it.  See Appeal ¶ 12, at 5.  Responding to the United States' accusations of dangerousness, Crisman

-13-

states that the estimation of potential dangerousness to the community is "overstated and excessively speculative." Appeal ¶ 13, at 6.

On September 23, 2011, the United States filed its Response. In the Response, the United States argues that Crisman has not come forward with sufficient evidence to rebut the presumption in favor of detention. See Response ¶ 21, at 11. Countering Crisman's suggestion that his offense is only technically a crime of violence, the United States cites cases which hold that there is "no sense in distinguishing . . . between producers and consumers of child pornography." Response at 11 n.4 (citing United States v. Gonzales, 445 F.3d 815, 819 (5th Cir. 2006); United States v. Turner, 626 F.3d 566, 574 (11th Cir. 2010)). The United States argues that Crisman's description of his fantasies "constituted admissions of his danger to the community, especially children," and that the "degree of harm and length the Defendant engaged in such criminal behavior, despite his knowledge that his conduct was illegal, renders him a danger to the community." Response ¶ 22, at 12. Furthermore, the United States contends that there is a high risk of recidivism given Chambreau's characterization of Crisman's addition as "pretty severe." Response ¶ 24, at 13. The United States also argues that Crisman violated his conditions of release in the state proceeding, because he used a computer and the internet, despite the state prohibiting him from doing so. See Response ¶ 25, at 14. While the United States' argument emphasized Crisman's dangerousness, the United States argued that Crisman presents a risk of flight as well, because of the lengthy sentence he faces. See Response ¶ 26, at 15. Addressing Crisman's treatment program under Chambreau, the United States challenges the accuracy of Mr. Chambreau's assessments, because his conclusions are based primarily on self-reporting, and argues that treatment does not foreclose a relapse. See Response ¶ 27, at 15-16. The United States points the Court to a study published in the Journal of Family Violence, conducted by Michael L. Bourke and Andres E. Hernandez, which it attached to its

-14-

Response and which suggests that there is a relationship between child pornography and sexual contact crimes.  See Response ¶¶ 28-29, at 16-18.[11]

On October 28, 2011, the Court held an evidentiary hearing.  The United States called Dupre to testify.  See Oct. 28, 2011 Tr. at 14:11-13 (Rees, Dupre).  Counsel for the United States, Charlyn Rees, and Dupre walked the Court through the case's facts.  See Oct. 28, 2011 Tr. at 13:17-32:8 (Rees, Dupre).  Crisman then had an opportunity to cross-examine Dupre.  See Oct. 28, 2011 Tr. at 33:25-34:5 (Court, Nieto).  Dupre stated that Immigration and Customs Enforcement ("ICE") agents asked him about  Crisman's location at the time the federal grand jury indictment was being determined.  Oct. 28, 2011 Tr. at 35:9-13 (Nieto, Dupre).  In speaking with ICE, Dupre stated that Crisman had been taking classes at CNM and that led the ICE agents there.  See Oct. 28, 2011 Tr. at 36:14-17.  The ICE agents verified that Crisman was taking a class at CNM through the internet. See Oct. 28, 2011 Tr. at 36:18-37:1 (Nieto, Dupre).  Dupre received this information through the ICE agents, but does not personally know what class Crisman took.  See Oct. 28, 2011 Tr. at 37:2-7 (Nieto, Dupre).  Dupre was not present during  Crisman's arrest and, although he spoke with the arresting officer regarding Crisman's library activities, Dupre declined an opportunity to interview Crisman again.  See Oct. 28, 2011 Tr. at 38:9-19 (Nieto, Dupre).

Dupre stated that the computers were located in Crisman's bedroom and that Pilon conducted his review of the computer media in that room.  See Oct. 28, 2011 Tr. at 41:6-13 (Nieto, Dupre).  Dupre conducted his interview with Crisman in Crisman's mother's bedroom.  See Oct. 28, 2011

---

[11]Michael Bourke is psychologist with the United States Marshals Service in Washington, D.C.  Andres Hernandez is a psychologist with Psychology Services at the Butner, North Carolina Federal Correctional Institution.  Their article is called: "The 'Butner Study' Redux: A Report of the Incidence of Hands-On Child Victimization by Child Pornography Offenders."  Michael L. Bourke & Andres E. Hernandez, The 'Butner Study' Redux: A Report of the Incidence of Hands-On Child Victimization by Child Pornography Offenders, 24 J. FAM. VIOLENCE 183 (2009).

Tr. at 41:14-20 (Nieto, Dupre).   Officers conducted four interviews with Crisman when they executed the search warrant -- three in the bedroom and one at the Rio Rancho Police Department. See Oct. 28, 2011 Tr. at 44:14-17 (Nieto, Dupre).  Dupre described his interviews with Crisman as conversational.  See Oct. 28, 2011 Tr. at 49:17-23 (Nieto, Dupre).   After hearing Crisman's fantasies, Dupre indicated that he called Crisman's neighbor and verified that there were two children living there -- one around five-years old and one around ten-years old.  See Oct. 28, 2011 Tr. at 50:7-51:1 (Nieto, Dupre).

On re-direct, Dupre testified that, at the time ICE learned of Crisman's internet class, Crisman was under state-ordered conditions which prohibited computer use.  See Oct. 28, 2011 Tr. at 52:23-53:1 (Rees, Dupre).

The United States argued that Crisman did not overcome the presumption against detention. See Oct. 28, 2011 Tr. at 53:25-2 (Rees).  With respect to the danger Crisman presents to the community,  the United States argued that Crisman is a person who: (i) sexually exploits children through his voluminous collection of child pornography; (ii) steals from his employer; (iii) steals children's underwear for his own sexual gratification; (iv) steals the identities of his employer's customers and other employees; and (v) attempts to break into customer's email accounts.  See Oct. 28, 2011 Tr. at 54:3-19 (Rees).  The United States also pointed out that Crisman did not comply with the state court's conditions of release and asserted that there is no reason to believe he would comply with federal conditions.  See Oct. 28, 2011 Tr. at 54:20-23 (Rees).  The United States contended that, in addition to the danger Crisman presents to the community, he presents a flight risk, because of the substantial penalties he faces if convicted.  See Oct. 28, 2011 Tr. at 54:23-55:4 (Rees). Furthermore, the United States argued that, even if the Court were to consider releasing Crisman pending trial, his mother is not a suitable third party custodian, because she knew nothing of his

-16-

criminal conduct even though he lived in her home.  See Oct. 28, 2011 Tr. at 55:5-12 (Rees).

In response to the Court's questions about Chambreau's testimony, the United States opined that Chambreau's work with Crisman is limited and dependent on self-reporting from Crisman.  See Oct. 28, 2011 Tr. at 55:13-20 (Court, Rees).  The United States pointed out that Chambreau does not look at the material or images, and does not know the scope of the criminal conduct.  See Oct. 28, 2011 Tr. at 55:20-25 (Rees).  Additionally, the United States emphasized that, even though Crisman is in treatment, he could still re-offend, and he is still a danger to the community.  See Oct. 28, 2011 Tr. at 56:1-4 (Rees).  The United States asserted that, in his testimony, Chambreau also recognized Crisman's danger to the community.  See Oct. 28, 2011 Tr. at 56:7-16 (Rees).  The Court asked whether the United States could meet its burden of clear-and-convincing evidence if Crisman is, as Mr. Chambreau described him, only a looker, rather than a doer.  See Oct. 28, 2011 Tr. at 57:2-6 (Court).  The United States countered, arguing that Crisman's desire for sex fuels his motivation in life and that he is willing to engage in criminal conduct to satisfy that desire.  See Oct. 28, 2011 Tr. at 57:7-11 (Rees).  Furthermore, the United States argued that there is no evidence that Crisman is not a hands on abuser.  See Oct. 28, 2011 Tr. at 57:13-16 (Rees).  The United States argued that, while the evidence may establish that Crisman is only a looker, such evidence does not mitigate his criminal conduct, which victimized the children who were the subject of such images and videos.  See Oct. 28, 2011 Tr. at 57:22-58:9 (Rees).

The Court then asked whether it was free to look beyond the criminal conduct to other circumstances of the offense when considering dangerousness.  See Oct. 28, 2011 Tr. at 58:10-17 (Court).  The United States responded that the Court was free to look at all the circumstances and stated that such broad analysis frequently occurs with defendants who have lengthy criminal histories.  See Oct. 28, 2011 Tr. at 58:18-22 (Rees).  The United States then listed the evidence that

it had presented which supported a finding of dangerousness.  First, the United States asserted that Crisman's behavior is, according to Chambreau, escalating.  See Oct. 28, 2011 Tr. at 59:11-13 (Rees).  Second, the United States argued that Crisman's distribution, receipt, and collection of child pornography establishes a danger.  See Oct. 28, 2011 Tr. at 59:13-14 (Rees).  Third, the United States contended that Crisman is willing to go into people's homes and steal children's underwear to fuel his sexual fantasies renders him a danger.  See Oct. 28, 2011 Tr. at 59:17-24 (Rees).  Fourth, the United States asserted that, because Crisman not only has sexual fantasies about children, but fantasies about specific neighborhood children, he presents a danger.  See Oct. 28, 2011 Tr. at 59:23-60:2 (Rees).  Fifth, the United States argued that Crisman is dangerous, because he stole from his employer and customers, and stalked some customers online.  See Oct. 28, 2011 Tr. at 60:3-10 (Rees).

The Court then asked Crisman about Chambreau's testimony and noted that a forty-percent risk factor concerned the Court.  See Oct. 28, 2011 Tr. at 60:12-21 (Court).  Crisman stated that the forty-percent risk referred to existing behavior and that Chambreau did not identify anything during his treatment that demonstrated that Crisman was moving towards an area of danger.  See Oct. 28, 2011 Tr. at 60:22-61:8 (Nieto).  Crisman also emphasized that Chambreau's testimony that there was a forty-percent chance that Crisman would act out, referred to the way Crisman acted out before -- viewing images on a computer.  See Oct. 28, 2011 Tr. at 61:9-14 (Nieto).  Crisman also noted that Chambreau's testimony before Judge Scott about what Crisman told him, regarding the use of underwear to facilitate masturbation, matched Dupre's testimony before the Court.  See Oct. 28, 2011 Tr. at 61:14-20 (Nieto).  Crisman argued that nothing in the testimony before the Court was new or startling information about his behavior, and that his conduct would not cross the threshold of dangerous activity.  See Oct. 28, 2011 Tr. at 61:21-62:1 (Nieto).

-18-

Crisman clarified that he did not oppose PTS' recommendation that he go to La Posada, but he was proposing that he return to living with his mother at their home. See Oct. 28, 2011 Tr. at 62:23-63:5 (Nieto). Crisman emphasized, however, that while he lived with his mother, she was not taking care of him or responsible for him during the relevant period. See Oct. 28, 2011 Tr. at 63:9-15 (Nieto). Crisman also stated that releasing to his mother's custody would ensure that he was more closely supervised than at La Posada, where he would be required to look for work and leave the property for the day. See Oct. 28, 2011 Tr. at 63:16-25 (Nieto). Crisman informed the Court that most of his neighborhood is now aware of the allegations against him and his mother has asked whether it would be permissible for them to move to some other part of town where the allegations are not so widely known. See Oct. 28, 2011 Tr. at 64:16-65:1 (Nieto). Crisman recognized that the United States had a valid concern about the two neighbor children still living in the neighborhood. See Oct. 28, 2011 Tr. at 65:4-7 (Nieto). Crisman argued that any evidence of a violation of conditions of release is too tenuous, because the information came to Mr. Dupre from third parties. See Oct. 28, 2011 Tr. at 65:18-66:3 (Nieto).

The Court then asked Crisman about the Butner study that the United States submitted with their Response, which explains that few defendants admit to sexual activity with children pretrial, but that, after conviction, eighty-six percent of defendants studied admitted to sexual activity with children. See Oct. 28, 2011 Tr. at 67:14-22 (Court). Crisman explained that such a study requires the Court to step through the looking glass and assume that he is lying. See Oct. 28, 2011 Tr. at 67:23-2 (Nieto). He argued that the Court is confined to the record before it, which includes no evidence that he crossed the line from a looker to a doer. See Oct. 28, 2011 Tr. at 68:5-7 (Nieto). Crisman admitted that the Court may examine factors beyond the charges in this case to establish dangerousness, but argued that the Butner report's theory that at some point he will admit that he

-19-

touched a child is specualtive.  See Oct. 28, 2011 Tr. at 68:8-21 (Nieto).  The Court asked whether

the United States could use Crisman's likelihood of returning to viewing child pornography to

support dangerousness.  See Oct. 28, 2011 Tr. at 69:14-19 (Court).  Crisman conceded that the Court

could use such evidence if there was indication that he has continued to use child pornography.  See

Oct. 28, 2011 Tr. at 69:20-21 (Nieto).  Crisman asserted that the United States is trying to bootstrap

the dangerousness from the nature of the charges onto the dangerousness that the release poses.

See Oct. 28, 2011 Tr. at 71:6-9 (Nieto).

The United States argued that even placement at La Posada was insufficient to negate the

danger to the community, because Crisman could get access to someone's cellular phone or

computer, and continue viewing child pornography.  See Oct. 28, 2011 Tr. at 72:10-18 (Rees).  The

United States reiterated that Crisman's own witness, Chambreau: (i) characterized his addiction as

"pretty severe"; (ii) stated that on a danger scale of one to ten, Crisman is a four; and (iii) admitted

that Crisman's behavior was escalating.  See Oct. 28, 2011 Tr. at 73:4-74:5 (Rees).  As to flight risk,

the United States argued that Crisman is facing a between five- to twenty-years on the receipt

charges and up to ten-years on the possession charges.  See Oct. 28, 2011 Tr. at 75:3-9 (Rees).

Crisman admitted that Chambreau had characterized the underwear as an escalation, but

argued that any such escalation occurred before the charges here and before he was in treatment.

See Oct. 28, 2011 Tr. at 76:20-25 (Nieto).  Crisman also argued that he faced significant penalties

in state court and did not flee.  See Oct. 28, 2011 Tr. at 77:6-21 (Nieto).

## STANDARD OF REVIEW BY THE DISTRICT COURT

"The standard of review for the district court's review of a magistrate judge's detention or

release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th

Cir. 2003).  "When the district court acts on a motion to revoke or amend a magistrate's pretrial

detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992).  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo).  "[I]t is within the district court's authority to review a magistrate's release or detention order sua sponte." United States v. Cisneros, 328 F.3d at 616 (citing United States v. Spilotro, 786 F.2d 808, 815 (8th Cir.1986)).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616.  To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g) Factors to be considered. -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> > (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

## **ANALYSIS**

Crisman argues that he should be released pending trial. He asserts that, after the state court released him on conditions of release and before being arrested on federal charges, he had completely complied with the terms of his release on the state charges. See Appeal ¶ 11, at 5. He contends that he has no criminal record other than the present charges and has never been charged with a violent crime which might indicate that he is a danger to the community. See Appeal ¶ 11, at 4-5. He further asserts that he has been undergoing intensive therapy for his sex addiction and addressing his childhood sexual abuse. See Appeal ¶ 12, at 5. Finally, he argues that his close relationship with his family, all of whom are located in Albuquerque, and his ties to the community demonstrate that he is not a danger and that the Court should release him pretrial. See Appeal ¶ 11,

at 4-5.

The United States argues that 18 U.S.C. § 3142(e)(3)(E) creates a rebuttable presumption that Crisman is a danger to the community and a flight-risk, and that the Court should consider the following in determining whether to detain Crisman:

    a.    The nature and circumstances of the offense,

    b.    The weight of the evidence against the person,

    c.    The history and characteristics of the person, and

    d.    The nature and seriousness of the danger to any person in the community that would be posed by Crisman's release.

Response ¶¶ 3-5, at 2-3 (citing 18 U.S.C. §§ 3142(e)(3)(E) and (g); United States v. Schaefer, No. 04-20156, 2007 WL 4180388 (D. Kan. Nov. 21, 2007)).  The United States argues that Crisman's description of his fantasies "constituted admissions of his danger to the community, especially children," and that the "degree of harm and length the Defendant engaged in such criminal behavior, despite his knowledge that his conduct was illegal, renders him a danger to the community." Response ¶ 22, at 12.  The United States further asserts that there is a high risk of recidivism given Chambreau's characterization of Crisman's addition as "pretty severe."  Response ¶ 24, at 13.  The United States contends that Crisman violated his conditions of release in the state proceeding, because he used a computer and the internet, despite being prohibited from doing so.  See Response ¶ 25, at 14.  Regarding the risk that Crisman will flee if released pending trial, the United States argues that Crisman faces a lengthy sentence and that the evidence against him is overwhelming. See Response ¶ 26, at 15.  Finally, the United States opposes a conditional release, arguing that "there are no conditions or combination of conditions which can assure the protection of the community, especially children, and insure the Defendant's appearance at future court dates."

Response ¶ 31, at 19.  It asserts that the only way to protect the community is detention.  <u>See</u>
Response at 20.

## I.    THE BURDEN IS ON CRISMAN TO PRODUCE SOME EVIDENCE SHOWING THAT HE IS NOT A FLIGHT RISK OR A DANGER TO THE COMMUNITY.

Crisman concedes in his Appeal that the charged offenses "carry a rebuttable presumption
of detention of 18 U.S.C. [§] 3142, and have been defined as crimes of violence under the United
States Code."  Appeal ¶ 9, at 4.  While there is a presumption of detention in a case involving the
charges in this case, the burden remains on the United States to prove that Crisman is a danger to
the community or a flight risk.  <u>See</u> <u>United States v. Villapudua-Quintero</u>, 308 F.App'x 272, 273
(10th Cir. 2009)(unpublished)("Once [a] presumption is invoked, the burden of production shifts
to the defendant," but "the burden of persuasion regarding risk-of-flight and anger to the community
always remains with the government."); <u>United States v. Martinez</u>, No. 09-2439, 2009 WL 5171853,
at * 4 (D.N.M. Oct. 28, 2009)(Browning, J.).  Section 3142 of Title 18 of the United States Code
discusses how a court should decide whether to detain or release a criminal defendant during the
period between indictment and trial on federal criminal charges.  <u>See</u> 18 U.S.C. § 3142; <u>United
States v. Villapudua-Quintero</u>, 308 F.App'x at 273 ("Pretrial detention is governed by 18 U.S.C. §
3142."); <u>United States v. Vorrice</u>, 277 F. App'x 762, 762 (10th Cir. 2008)("Pretrial release and
detention are governed by 18 U.S.C. § 3142.").  The statute provides that one of four things may
occur in the period between being charged with a federal offense and the trial: (i) a defendant may
be released, with or without the requirement of an appearance bond; (ii) a defendant may be
conditionally released; (iii) a defendant may be "temporarily detained to permit revocation of
conditional release, deportation, or exclusion"; or (iv) a defendant may be detained until trial.  18
U.S.C. § 3142(a)(1)-(4).

The rule provides that "a defendant may be detained pending trial only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. Cisneros, 328 F.3d 610, 616-17 (10th Cir. 2003). See United States v. Villapudua-Quintero, 308 F. App'x at 273. This rule implies a presumption in favor of release in most cases. Furthermore, the burden of proving risk of flight, and dangerousness to any person or the community, is on the United States. See United States v. Cisneros, 328 F.3d at 616. It must prove risk of flight by a preponderance of the evidence and/or prove dangerousness by clear-and-convincing evidence. See United States v. Cisneros, 328 F.3d at 616 (citing 18 U.S.C. § 3142(f)). When a defendant is charged with certain crimes, however, a presumption arises that the defendant is a flight risk and a danger to the community. See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F. App'x at 273 ("[T]he drug-and-firearm-offender presumption [of 18 U.S.C. § 3142(e)(3)(A)] applied and defendant was presumed to be both a flight risk and danger to the community."); United States v. Vorrice, 277 F.App'x at 762 ("[Section] 3142(e) . . . provides . . . rebuttable presumptions favoring detention in certain circumstances."). The crime of which Crisman is accused is one of those crimes:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed –
>
> . . . .
>
> (E) an offense involving a minor victim under section . . . 2252(a)(2) . . . of this title.

18 U.S.C. § 3142(e)(3). Crisman is charged with a violation of 18 U.S.C. § 2252(a)(2). At the October 28, 2011 hearing before the Court, the United States presented Dupre's testimony. Dupre

was the detective who executed the search warrant at Crisman's residence, and he testified extensively about the images of child pornography found on seized computers and other evidence of criminal conduct seized from the home.  See Oct. 28, 2011 Tr. at 13:17-32:8 (Rees, Dupre).  The Court is convinced that this unrebutted testimony establishes probable cause to believe that Crisman committed the crimes alleged.  The conduct described likely establishes by clear-and-convincing evidence that Crisman "knowingly receive[d], or distribute[d], any visual depiction using any means or facility of interstate or foreign commerce . . . by any means including by computer, or knowingly reproduce[d] any visual depiction for distribution using any means or facility of interstate or foreign commerce" where "such visual depiction involves the use of a minor engaging in sexually explicit conduct."  18 U.S.C. § 2252(a)(2).  Moreover, "the grand jury indictment is sufficient to establish the finding of probable cause" that Crisman committed the charged offenses.  United States v. Holguin, No. 10-3093-006, 2011 WL 2429322, at *5 (D.N.M. June 2, 2011)(Browning J.)(citing United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993); United States v. Moreau, No. 07-0388, 2007 WL 2219412, at *4 (D.N.M. May 7, 2007)(Browning, J.)).  Because the Court finds that probable cause exists to believe that Crisman committed the crimes alleged and Crisman concedes that the crimes alleged constitute crimes of violence requiring a rebuttable presumption, the Court presumes that "no condition or combination of conditions will reasonably ensure the appearance of [Crisman] as required and the safety of the community."  18 U.S.C. § 3142(e)(3).

Once the presumption is established, Crisman has the burden to present some evidence that he is not a flight risk or a danger to the community.  See United States v. Villapudua-Quintero, 308 F.App'x 272, 273 (10th Cir. 2009)("Once [a] presumption is invoked, the burden of production shifts to the defendant.")(quoting United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir.1991)).  "The defendant's burden of production is not heavy, but some evidence must be

produced.  Even if a defendant's burden of production is met, the presumption remains a factor for

consideration by the district court in determining whether to release or detain."  <u>United States v.</u>

<u>Villapudua-Quintero</u>, 308 F.App'x at 273 (quoting <u>United States v. Stricklin</u>, 932 F.2d at 1355).

## II.     CRISMAN MET HIS BURDEN OF PRODUCTION IN THE FACE OF THE <u>PRESUMPTION OF DETENTION.</u>

The only evidence that Crisman presented in support of his release was the testimony of his

therapist, Chambreau, at the hearing before Judge Scott.  Chambreau explained that he is a licensed

professional counselor who specializes in sex offender treatment and sex addiction.  <u>See</u> Sept. 13,

2011 Tr. at 5:19-20, 5:23-24 (Chambreau).  Chambreau had treated Crisman for approximately three

to four months at the time of the hearing.  <u>See</u> Sept. 13, 2011 Tr. at 6:2 (Chambreau).  Chambreau

diagnosed Crisman with a major depressive disorder coupled with anxiety.  <u>See</u> Sept. 13, 2011 Tr.

at 6:6-9 (Chambreau).  Chambreau testified:

> Basically when I deal with people who have been charged with this kind of crime
> there is a difference between doers and lookers and dangers into the community.  I
> think that in Mr. -- Richard's case is that he is addicted -- he's a sex addict, he's
> addicted to child pornography in that that's the main culprit in this kind of alleged
> crime.  And I think that we have to distinguish when we do an assessment on a client
> in terms of dangerousness to the community is, is he a doer or is he a looker.  And
> he's a looker.

Sept. 13, 2011 Tr. at 10:11-19 (Chambreau).  Mr. Chambreau stated that possession of over 13,000

images was expected behavior for someone addicted to child pornography.  <u>See</u> Sept. 13, 2011 Tr.

at 10:20-11:1 (Tierney, Chambreau).  When questioned whether Crisman continues to view child

pornography, Mr. Chambreau responded: "Since he's been in counseling, to my knowledge, he has

not viewed any child pornography."  Sept. 13, 2011 Tr. at 12:10-15 (Tierney, Chambreau).  With

respect to Crisman's potential placement in La Posada, Chambreau testified: "I think that the La

Posada can give him enough appropriate supervision, with treatment seeing me or some other

program, that the community is not in danger."  Sept. 13, 2011 Tr. at 16:9-12 (Chambreau).

Although this evidence is not overwhelming, Crisman has met his burden to produce some evidence

showing he is not a danger to the community or a flight risk.

## III.   THE FACTORS OF 18 U.S.C. § 3142(g) WEIGH IN FAVOR OF DETAINING CRISMAN.

Even with the presumption in favor of detaining Crisman, the burden remains with the

United States to prove that Crisman would constitute a flight risk or a danger to the community if

he were released pending trial.  See United States v. Villapudua-Quintero, 308 F.App'x at 273

("Once [a] presumption is invoked, the burden of production shifts to the defendant," but "the

burden of persuasion regarding risk-of-flight and danger to the community always remains with the

government.")(quoting United States v. Stricklin, 932 F.2d at 1354-55).  Here, Crisman rebutted the

presumption.  The United States argues that he is both a flight risk and a danger to the community.

Crisman argues that the United States has not provided sufficient evidence to prove that he is either

a danger to the community or that there are no conditions of release that could adequately address

those concerns.

Subsection 3142(g) of Title 18 of the United States Code lists the factors that a court shall

consider when determining "whether there are conditions of release that will reasonably assure the

appearance of the person as required and the safety of any other person and the community."  18

U.S.C. § 3142(g).  Those factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –

(A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The first factor weighs heavily in favor of detention. Crisman is charged with a crime of violence. In the Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009 (codified at 18 U.S.C. § 2251), Congress stressed that the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. at 3009-27. Although there are no allegations that Crisman engaged in illicit physical contact with a minor, or that he directly solicited a minor, that fact does not preclude detention. See United States v. Schenberger, 498 F.Supp.2d 738, 743 (D.N.J. 2007). See also United States v. Reiner, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006)("The Indictment contains extremely serious charges that bear directly on the issue of danger. Specifically, the Indictment charges ten counts of possession of child pornography arising from the possession of more than 500 still images and 60 videos of young child engaged in sexually explicit conduct . . . ."). Here, Crisman stands accused of possessing at least 15,000 images and nineteen videos consistent with child pornography. See Response ¶ 16, at 8. Of those images, the NCMEC identified 1,884 known child pornography images. See Response ¶ 17, at 8. Crisman would use the images to masturbate

at least two to three times a day, and admits that he has an addiction.  See Response ¶¶ 11, 15, at 5,
7-8.  This evidence establishes that Crisman was more than a casual participant in the world of child
pornography.  See United States v. Bivens, No. 7-11-cr-19, 2011 WL 2182239 at *2 (M.D. Ga. June
3, 2011); United States v. Brown, Nos. 2-07-290, 2-08-106, 2008 WL 2098070, at *3 (S.D. Ohio
May 16, 2008)("Specifically, the affidavit charges possession of child pornography on several
computers and cell phones, consisting of nearly 2000 images of child pornography . . . .
Accordingly, the nature and offense with which Brown is charged weighs in favor of his continued
detention.").  While Chambreau characterized Crisman's actions as those of a "looker," Sept. 13,
2011 Tr. at 10:11-19 (Chambreau), the testimony before the Court indicates that Crisman has taken
steps to move beyond only looking, see Oct. 28, 2011 Tr. at 24:16-19 (Dupre).  Dupre testified that
investigators discovered seventy-two pairs of soiled women's and children's underwear, which
Crisman later admitted to stealing from the homes of family, friends, and neighbors.  See Oct. 28,
2011 Tr. at 24:21-25:4 (Rees, Dupre); United States v. Brown, 2008 WL 2098070, at *3 ("Further,
also found near Brown's bed was a pair of young boys underpants and a sex toy.").  Mr. Chambreau
characterized this behavior as "escalation."  Sept. 13, 2011 Tr. at 14:15-15:5 (Chambreau).  See
United States v. Brown, 2008 WL 2098070, at *4 (ordering a defendant's detention where "it
[could] not be said with any assurance" that the defendant was not "moving toward" creating child
pornography).  This behavior is particularly troubling to the Court, because it demonstrates that, at
the time of his arrest, Crisman had moved beyond viewing pornographic images of children to find
new ways to satisfy his sexual desires.  Accordingly, the nature and circumstances of the offenses
charged weigh in favor of Crisman's continued detention.

　　　　The second factor weighs in favor of detention.  The evidence against Crisman, if admissible,
supports a finding of guilt.  Investigators seized multiple computers and computer related media at

Crisman's home.  See Response ¶ 10, at 4-5; Oct. 28, 2011 Tr. at 18:11-12, 18:18-21 (Rees, Dupre).

Furthermore, about $20,000.00 of Apple products were found, including six Macbooks and Ipods.

See Response ¶ 13, at 6; Oct. 28, 2011 Tr. at 25:11-17 (Dupre).  Using images found on only three

of the items seized, the forensic examiner identified over 15,000 images and over nineteen videos

of child pornography.  See Response ¶ 19, at 8.  Moreover, the statements Crisman made to

investigators constitute admissions of guilt.  See Response ¶¶ 11-15, at 5-7; Oct. 28, 2011 Tr. at

22:7-29:20 (Rees, Dupre).

The third factor, the history and characteristics of the defendant, points in conflicting

directions.  The PTS report indicates that Crisman has several family members in the Albuquerque

area.  Crisman has lived in the Rio Rancho area since approximately 1990.  PTS discovered no

criminal offense history.  Furthermore, Crisman admitted to and sought treatment for his addiction.

See Appeal ¶ 11, at 4.  On the other hand, according to the PTS report Crisman is unemployed and

depends on his mother for support.

Finally, the fourth factor, the nature and seriousness of the danger to any person or the

community posed by release, weighs in favor of detention.  A danger to the community does not

only include physical harm or violent behavior; the concept of danger may also include non-physical

harm.  See United States v. Lee, 208 F.3d 228, 2000 WL 228263, at *2 (10th Cir. 2000)(unpublished

table decision)("In adopting the Bail Reform Act, Congress specifically recognized that the 'concern

about safety [under the Bail Reform Act] should be given a broader construction than merely danger

of harm involving physical violence . . . . [T]he concept of danger under § 3142 could be 'extended

to nonphysical harms.'"); United States v. Provenzano, 605 F.2d 85, 95 (3d Cir. 1979)(holding that

"[a] defendant's propensity to commit crime generally, even if the resulting harm would not be

solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail

Reform Act]").  The United States Court of Appeals for the Tenth Circuit has also noted, in the context of a restitution determination, the dangers of child pornography and cited a case from the Supreme Court of the United States, which stated: "Pornography poses an even greater threat to the child victim than does sexual abuse of prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years."  United States v. Julian, 242 F.3d 1245, 1247 (10th Cir. 2001)(citing New York v. Ferber, 458 U.S. 747, 758-60 nn. 9-10 (1982)).  Whether a defendant presents a danger to the community on the basis of possession or receipt of child pornography alone is a factually intensive inquiry, and district courts have split on the issue. Compare United States v. Schenberger, 498 F.Supp.2d at 744 ("No evidence has been presented that defendant molested or physically abused a child.  Nevertheless, this Court has already discussed the fact that child pornography is an insidious offense that is dangerous to the entire community, not just minors."), with United States v. Byrd, No. 5:10CR53-1, 2010 WL 546127, at * 2 (W.D.N.C. Dec. 29, 2010)(releasing on conditions a defendant charged with child pornography in violation of 18 U.S.C. § 2552A(a)(2)).  The Tenth Circuit has affirmed a district court's detention of a defendant pre-trial where the defendant took some step beyond looking at pornography -- using a children's chatroom to contact children -- but did not physically touch a child.  See United States v. Boy, 322 F.App'x 598, 2009 WL 1019988, at *2, 4 (10th Cir. Apr. 16, 2009)(unpublished)("Turning to the merits of the district court's detention order, we conclude that the evidence on the statutory factors supported the court's conclusion and that it properly ordered Mr. Boy detained pending trial.").

Crisman's own therapist put his level of dangerousness at a four, on a scale of one to ten, based on Crisman's non-specific fantasies.  See Sept. 13, 2011 Tr. at 13:16-23 (Tierney, Chambreau).  The Court finds it significant that Chambreau would rate Crisman's dangerousness so high based on the non-specific fantasies.  Chambreau did not move from that rating when the

United States presented other evidence of Crisman's conduct, such as the specific fantasies regarding neighborhood children and the stolen underwear, because Crisman is currently in treatment.  See Sept. 13, 2011 Tr. at 13:24-15:8 (Tierney, Chambreau).  Chambreau conceded, however, that stealing pairs of underwear was an escalation in behavior that increased Crisman's dangerousness.  See Sept. 13, 2011 Tr. at 15:1-8 (Tierney, Chambreau).  Although Chambreau believes therapy can address these behaviors, the Court notes that Crisman has only been in therapy for four months, while Crisman has been accessing child pornography for over ten years.  See Sept. 13, 2011 Tr. at 8:1 (Chambreau); Response ¶ 15, at 7.  Crisman's move beyond watching child pornography to stealing and masturbating with children's underwear strikes the Court as a step towards being a "doer."  Sept. 13, 2011 Tr. at 10:11-19 (Chambreau).  In United States v. Byrd, the United States District Court for the Western District of North Carolina released the defendant from federal custody pending trail based in part on testimony that "there is little indications of exploitative, predatory, or antisocial interests and adaption."  2010 WL 546127, at * 2.  Given Crisman's conduct, not only stealing the underwear, but stealing customer information at Best Buy to stalk customers he found attractive online, the Court does not believe that it could say the same about Crisman.

Other courts considering § 3142 in the context of  child pornography charges have found a defendant's strong interest in having sexual relations with children weighs in favor of detention under the fourth § 3142 factor.  See United States v. Bivens, 2011 WL 2182239, at *3 ("The Court is hesitant to release back into the community a defendant who has shown a persistent determination to access child pornography and interest in having sexual relations with minors."); United States v. Tierney, No. 09-68-VBF-13, 2010 WL 1929828, at *1 (C.D. Cal. May 10, 2010)("His messages posted on Lost Boy indicate a deep familiarity with child pornography and make his sexual interest

in young boys explicitly clear. . . . This shows that the Defendant is a danger to the community, particularly to children."). Crisman admitted that he is addicted to child pornography and described fantasies of having sex with children. See Response ¶ 12, at 6. Of particular concern to the Court is Crisman's specific fantasies about a child that lives next-door to him. See Response ¶ 15, at 8. The United States presented evidence that Crisman has been in the house where that child resides, and it is unknown whether one of the pairs of stolen underwear in Crisman's possession belongs to this child. See Oct. 28, 2011 Tr. at 29:8-10 (Dupre). The Court would be reluctant to release Crisman back into the community where this boy lives, because it seems that Crisman presents a particular danger him. Crisman appears willing to act on his fantasies and to commit illegal acts to fulfill his fantasies. He appears to have crossed the line from a looker only to a doer, and is willing to act unlawfully when he does.

Furthermore, there is evidence that Crisman stole identification information from Best Buy customers and employees, and used it to support his child pornography addiction. See Response ¶ 14, at 7. Crisman was somehow able to access women's purses and remove items unnoticed. See Response ¶ 14, at 7. This level of criminal resourcefulness in pursuit of his fantasies and as a means of funding his addiction troubles the Court, and forces the Court to consider what kind of danger Crisman may present if he were to be released into the community but cut off from child pornography. See United States v. Bivens, 2011 WL 2182239, at *3 ("Moreover, even if Bivens does not access or distribute child pornography while released, the Court [ha]s considered that Bivens might act out if deprived of viewing child pornography.").

In addition to the statutory factors, the Tenth Circuit has advised that, even where the presumption in favor of detention is rebutted, the fact that Congress saw fit to create the presumption for the crimes of which the defendant is accused should be considered as a factor in favor of

detention.  See United States v. Villapudua-Quintero, 308 F.App'x at 273 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.")(quoting United States v. Stricklin, 932 F.2d at 1355). Considering the statutory factors and the additional factor that the presumption in favor of detention arose in this case, the Court concludes that there is clear-and-convincing evidence that Crisman would pose a danger to the community if released.

The Court does not believe that the release conditions which Crisman proposes mitigates this risk of danger.  Placing Crisman back in his home, where he committed a significant portion of the alleged crimes, does not appear to decrease this risk to an acceptable level.  Returning Crisman to his home, also seems to place temptation before him, because he will again be living next door to the object of one of his fantasies.  At the October 28, 2011 hearing, Crisman insisted that he was not requesting that the Court release him into his mother's care.  See Oct. 28, 2011 Tr. at 64:4-6 (Nieto). In any case, Crisman's mother does not appear to be an appropriate third-party guardian, because the charged offenses occurred while Crisman lived with her and Crisman indicated that she is supposed to have back surgery soon, such that she will require a caretaker.  See Sept. 8, 2011 Tr. at 9:12-14 (Nieto); United States v. Boy, 2009 WL 1019988, at *2-3 (approving detention where district court found the defendant's family unsuitable custodians, because they were unlikely to consistently supervise the defendant and where defendant lived with family at time of charged offense).  Moreover, the ankle bracelet does not appear to address the danger concern.

> Even if the Court were to order electronic monitoring and home detention of the defendant pending trial, that condition would not adequately address his ability to access phones or computers in his home which could be used for the types of illicit activities described above, even if steps were taken to try to prevent those items from being present in the house.

United States v. Reiner, 468 F.Supp.2d at 399.  PTS recommended placing Crisman in a half-way

house rather than returning him to his home.  The United States and Crisman, himself, persuaded the Court, however, that such an arrangement might provide even less protection to the community than sending him to his home under house arrest.    At the October 28, 2011 hearing, the United States argued that La Posada could not provide the level of supervision necessary to prevent Crisman from accessing all computers, cellular-telephones and other devices with access to the internet.  See Oct. 28, 2011 Tr. 72:9-18 (Rees).  Crisman also argued that there is very little that La Posada would do in terms of supervision while he is at the halfway house.  See Oct. 28, 2011 Tr. at 63:17-21 (Nieto).  Crisman emphasized that he would be required to leave and look for work, essentially leaving him to his own devices.  See Oct. 28, 2011 Tr. at 63:21-23 (Nieto).

The Court does not think that a halfway house protects the children of Albuquerque adequately.  The Court gave some consideration to placing Crisman in La Posada, but locking him down there.  In other words, Crisman would have to remain at La Posada, and would not be required to seek work or free to wander.  He would have to stay at the facility.  The Court has successfully used this release for Native Americans who have committed sexual acts on minors.  This arrangement often helps the defendant's counsel and the defendant to have ready access to each other, rather than requiring the defendant to be brought to Albuquerque or forcing counsel to drive to remote locations in the state.  This arrangement also sufficiently protects the children of Albuquerque.  After careful consideration of this arrangement, however, the Court declines to use this condition, and, indeed, there does not appear to be much support for it from either party.  First, Crisman does not appear to need this arrangement to facilitate legal consultations and representation. Most important, however, it appears that Crisman has computer skills that other defendants do not have, and this locked-down arrangement might not prevent him from getting a cellular telephone and doing more damage.  See Oct. 28, 2011 Tr. at 72:13-18 (Rees)("There's a case that I'm aware

of where . . . a person was put in La Posada and they were basically put under this house confinement, if you will, for child pornography-related conduct[] and they got ahold of a cell phone and next thin[g] you know they were back involved in similar type behavior.").

Crisman's former position as a member of Best Buy's Geek Squad and demonstrated resourcefulness in funding his child pornography addiction also convinces the Court that there are no conditions or combination of conditions that would reasonably assure the safety of the community. "The ubiquitous presence of the internet and all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion." United States v. Voelker, 498 F.3d 139, 145 (3d Cir. 2007). Other courts have noted the difficulty of constructing "measures that could confidently assure that [a] defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities." United States v. Schenberger, 498 F.Supp.2d at 745. See United States v. Falcon, No. 06-60080, 2007 U.S. Dist. LEXIS 44358, at *15-16 (W.D. La. June 18, 2007)("It is not possible to formulate conditions of release which would completely deprive such a defendant of the ability to possess or attempt to possess additional child pornography."); United States v. Reiner, 468 F.Supp.2d at 399 ("In this day and age, with devices such as cellphones, Blackberries, and laptops, there are no conditions which can reasonably assure the safety of the community under the particular circumstances of this case if the defendant is released on bail."). Crisman has previously exhibited no inhibitions about removing items from women's purposes, and his computer skills provide him with the ability to use such devices to covertly access and download child pornography. Moreover, the United States presented evidence that Crisman violated his state conditions of release and accessed the internet as well as a computer when the state court prohibited him from doing so. See Response ¶ 19, at 9; Oct. 28, 2011 Tr. at 31:11-17, 33:3-8 (Rees, Dupre); Order Setting Conditions at 1 ("No Computers

or Computer Access/No Contact Individuals under 18 yo."). Crisman questioned the value of such testimony because Mr. Dupre heard all of the evidence of a violation third hand. See Oct. 28, 2011 Tr. at 65:18-66:3 (Nieto). The Court, however, may consider hearsay testimony during a pretrial detention hearing. See United States v. Hernandez, 778 F.Supp.2d 1211, 1227 (D.N.M. 2011)(Browning, J.)("The Court therefore concludes that Crawford v. Washington did not extend Confrontation-Clause protection to detention hearings. T. Hernandez' argument that the Court may not consider hearsay testimony in his detention hearing is thus unavailing."). Furthermore, at the September 8, 2011 hearing before Judge Scott, Crisman admitted that he has been taking a class at CNM that involves internet access, and although he had been having his sister access it for him, he "was on the CNM website a couple of days before he was arrested" on federal charges. Sept. 8, 2011 Tr. at 8:18-2 (Nieto).

The United States asserts that Crisman also presents a risk of flight, because of the potential sentence he faces. See Response ¶ 26, at 15. The Court concludes that the United States has not met its burden of proving by a preponderance of the evidence that no conditions could reasonably assure Crisman's appearance in Court. Crisman has lived in Rio Rancho since approximately 1990 and have close family ties to New Mexico. Crisman also made his four state-court appearances when these charges were pending in that forum. See Appeal ¶ 11, at 5. While the possible federal sentence may be greater than that possible under the state charges, the Court is not convinced that this greater jeopardy would cause Crisman to flee. Accordingly, the Court finds that some combination of conditions could reasonably assure Crisman's appearance in court, see 18 U.S.C. § 3142(e), and orders the detention of Crisman pending trial solely on the grounds of dangerousness.

While the Court is cautious about detaining "lookers" and people who merely fantasize, the Court is also not obligated to close its eyes and to not detain someone until it has evidence that the

defendant has touched someone.  The clear-and-convincing evidence is that the temptation is strong, and while he knows touching is wrong, he has escalated his behavior to stealing.  If he is willing to break the law and steal, he may be tempted to touch, particularly given that his usual means of satisfying his fantasies will be taken from him.  Indeed, the stealing itself is a danger to the community.  Crisman's own expert rates him as a forty-percent chance of dangerousness, and sometimes the level of dangerousness is so high that the Court must reduce the risk to near zero for the risk to be at an acceptable level.  Also the Butner study suggests that most who appear to be lookers are, in fact, doers.  The Court has carefully considered all available options, and in this case because of his superior computer skills, there are no conditions or combination of conditions that would mitigate his dangerousness to the community to an acceptable level.  See United States v. Christy, No. 10-1534, 2010 WL 2977610, at *8 (D.N.M. June 28, 2010)(Browning J.)("Christy is an intelligent man and a trained electrical engineer . . . . The Court has great concern that electronic monitoring at the halfway house does not provide sufficient reasonable protection to the community and that he may be able to outsmart the system before Probation and the Marshals could re-arrest him.").

Because the United States has shown by clear-and-convincing evidence, that Crisman presents a danger to the community, and that no conditions or combination of conditions can reasonably assure the community's safety, the Court will affirm Judge Scott's Order of Detention.  See United States v. Boy, 2009 WL 1019988 at *3 (affirming a district court order of detention where the district court found "that if Mr. Boy did violate the terms of his release concerning access to child pornography, it would put others at risk and could have a prolonged and devastating effect on a young victim").

IT IS ORDERED that the Defendant's Appeal of Detention Order and Motion for Release

is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
    United States Attorney
Charlyn E. Rees
    Assistant United States Attorney
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Arturo Nieto
Nieto Law Office
Albuquerque, New Mexico

        *Attorneys for the Defendant*